UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR07-0006S |
| | ) | |
| JUAN ORELLANA | ) | |

---

MOTION FOR SENTENCE CONSIDERATION

Now comes Juan Orellana, the Defendant in the above captioned matter, and moves this Honorable Court, pursuant to Local Rule of Criminal Procedure 32 (2006), to consider and impose a sentence that is sufficient, but not greater than necessary, in compliance with18 U.S.C. § 3553(a). After considering all the appropriate information present in this case, the Court should conclude that the advisory guidelines call for a sentence longer than what is sufficient to comply with 18 U.S.C. § 3553(a). Mr. Orellana requests the Court impose a sentence of imprisonment equivalent to the time he has been held in custody since his arrest, time served, which will be sufficient in this case to satisfy the purposes of sentencing.

Respectfully submitted
Juan Orellana
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Dennis Jenkins, United States Probation Officer, and Peter Neronha, Assistant United States Attorney, on May 4, 2007.

/s/ Kevin J. Fitzgerald

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR07-0006S |
| | ) | |
| JUAN ORELLANA | ) | |

# MEMORANDUM IN SUPPORT OF SENTENCING

## I. Introduction

Mr. Orellana respectfully submits this memorandum to assist the Court in determining a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a) (2005). Additionally, Mr. Orellana submits this memorandum in support of his Motion for Sentencing Consideration advocating for a sentence outside of the suggested guideline range. The Court is required to sentence a defendant below the advisory guideline range if such a sentence is sufficient to achieve the purposes of sentencing. *Id*. Mr. Orellana requests the Court to consider imposing a sentence of time served. The proposed sentence adequately addresses society's needs of punishment and deterrence without being longer than necessary.

## II. Procedural Background

Agents of the ATF arrested Mr. Orellana on November 3, 2006, after brokering a sale of a firearm to him as part of a sting operation. Mr. Orellana appeared in Federal court on November 6, 2006, and was detained at the Wyatt Detention Facility. Mr. Orellana agreed to information charging, waived his right to a grand jury review and indictment, and pled guilty before the court on January 24, 2007. Sentencing is scheduled for May 11, 2007.

## III. Sentencing Considerations

### A. General

The Court is bound in its sentencing considerations by 18 U.S.C. § 3553(a). The United States Sentencing Guidelines are not the law and the Court is not bound by its suggested sentences. *United States v. Booker*, 543 U.S. 220, 259 (2005). The statute, § 3553(a), requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentence available, the need to avoid unwarranted sentencing disparity, the need to provide restitution, and the suggested guideline range. 18 U.S.C. § 3553(a)(1), (a)(3)-(7). The primary sentencing mandate of § 3553(a) directs the sentencing court to impose the minimally-sufficient sentence to achieve the statutory purposes of punishment—justice, deterrence, incapacitation, and rehabilitation: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 18 U.S.C. § 3553(a) (emphasis added).[1] This so-called "parsimony provision" is not simply a factor to be considered in determining sentence; it represents a cap above which the Court is statutorily prohibited from sentencing, even when a greater sentence is recommended by the sentencing guidelines. *Cf., United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part).[2] If the Court feels a sentence below the guidelines supports the purposes of sentencing then the Court must impose that particular sentence.

The statutory language notwithstanding, the First Circuit has proclaimed that the advisory guideline range is not just a mere factor in the list above. *United States v. Jimenez-Beltre*, 440 F.3d

---

[1] The statute provides, in pertinent part, that:

"the court consider the need for the sentence imposed-

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> © to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"

18 U.S.C. § 3553(a)(2) (2005).

[2] The precise meaning of the provision, however, is difficult to discern. *See United States v. Navedo-Concepcion*, 450 F.3d 54, 58-59 (1st Cir. 2006) (pointing out that most of the purposes of sentencing weigh negatively toward a defendant and that "there is no mathematical algorithm for the perfect sentence.").

514, 518 (1st Cir. 2006); *see also United States v. Thurston*, 456 F.3d 211, 215 (1st Cir. 2006), *United States v. Smith*, 445 F.3d 1, 4(1st Cir. 2006). The Circuit Court believes the guidelines should carry more weight than the other considerations because they "represent the only integration of the multiple sentencing factors set forth in § 3553(a), often reflect past practice, and bear the imprimatur of the Sentencing Commission." *Thurston*, 456 F.3d at 215 (quoting *Smith* 445 F.3d at 4). Beyond the declaration of heightened importance, the guidelines are not presumptively or per se reasonable, and still reflect generalizations in sentencing. *Jimenez-Beltre*, 440 F.3d at 518. The Court made that distinction seemingly to avoid the appearance of reestablishing a mandatory sentencing scheme. *Id.* (as struck down in *Booker*). Unfortunately, the heightened influence of the guidelines, as well as the sliding scale of justification for sentences outside of the guidelines[3], continues to embrace and support a de facto mandatory sentencing scheme.[4]

This Court must guard against any de facto mandatory sentencing scheme. *Booker*, 543 U.S. at 258-61 (mandatory sentencing schemes unconstitutional). While the guidelines incorporate a number of sentencing factors, they do not include any analysis, evaluation, or consideration of an individual's unique characteristics; they are generalizations. *See Jimenez-Beltre*, 440 F.3d at 518. An individual's background, character, and upbringing cannot be easily quantified in a guideline system, nevertheless, the Court must consider that unique individual information. 18 U.S.C. § 3553(a). In short, the guidelines represent cookie cutter justice at its worst; one size does not fit all. The Court must eschew general application of the advisory guidelines and consider all of the unique characteristics of the defendant when determining this sentence. The sentencing judge is in the best position to evaluate individual defendants under § 3553(a) and determine the appropriate sentence.[5]

---

[3] The First Circuit now requires greater justification for sentences outside of the advisory guideline range depending on how much the sentence varies from the guideline. *Thurston*, 456 F.3d at 215 (citing *Smith*, 445 F.3d at 4).

[4] In fact, the First Circuit has yet to reverse a guideline sentence as unreasonable while reversing all below guideline sentences appealed by the government. *See* NYCDL Appendix to Amicus Brief in *Rita v. United States* and *Claiborne v. United States* (excerpt attached; available at www.nycdl.org (reasonableness review database).

[5]Comparing other § 3553(a) factors to advisory guidelines actually resembles the comparison of apples to oranges because only the guidelines directly coincide with a time period;

Mr. Orellana presents ample circumstance to warrant the Court's imposition of a sentence below the advisory guideline range in this instance.

B. Personal Background

Mr. Orellana grew up in a rural area of Guatemala. His grandparents primarily raised him, but his mother and father also had an influence in his life. He continues to have a good relationship with his parents and siblings in Guatemala, as well as his brother here in Providence. Mr. Orellana is also married and has a 12 year old son.

Most remarkable and unique about Mr. Orellana is his work history. He left school at a very young age to work along with other family members on a cattle ranch. He maintained that employment until he first came to the United States in 1995 at the age of 24. By that time he was married and had an infant son. Mr. Orellana made the decision to come to the United States in order to make more money and support his family. He worked in Boston for the bakery chain "Finagle a Bagel" for four years. He sent money home with the hope of providing a better life for his family. He returned to Guatemala in 1999 and started to establish his own farm and ranch. He returned to the United States again in 2002 for economic reasons, and settled in Providence. He has worked at L'Epicureo restaurant from the time he returned until his arrest while also working at Camille's Restaurant for the past two years. The letter from his L'Epicureo employers attached to the presentence report clearly describes Mr. Orellana's true character. He is an extremely hard worker who had held two full time kitchen positions for over two years. His work ethic is unique to the point of novelty before this Court. Apart from his immigrant status, Mr. Orellana was a strong, productive member of the community attempting to grasp the American dream. The Court should not discount Mr. Orellana's work history at all when determining the appropriate sentence in this matter.

C. Criminal History

Mr. Orellana had one other contact with the criminal justice system; a misdemeanor driving offense. That contact did not amount to any countable conviction under the guidelines. Essentially

---

the sentencing court must then look to the other factors to determine if that suggested period of incarceration is appropriate under all of the circumstances in the case. *Jimenez-Beltre*, 440 F.3d at 525 (Lipez, J., dissenting) (emphasis added).

Mr. Orellana has led a very law abiding life while in the United States, and the Court should weigh this fact heavily in his favor.

D. Nature of the Offense

Unauthorized possession of a firearm always has the potential to create a serious and dangerous situation. The facts here, however, show an exception to that standard. 18 U.S.C. § 922(g) prohibits a variety of individuals from possessing guns; felons, drug addicts, mentally unstable persons, domestic abusers, dishonorable veterans, and illegal aliens. The reasoning for the possession prohibition of the five former categories is based on dangerousness. That same label of dangerousness does not automatically attach to aliens like Mr. Orellana. In this case Mr. Orellana attempted to purchase the gun for his wife's protection in Guatemala. Guatemala has a long unstable history replete with insurgent rebel groups and government sponsored death squads. Although the political situation is presently stable, the ability to protect oneself from brigands or corrupt police continues to be a legitimate concern. Mr. Orellana, fearing for the safety of his family, decided to get a gun for their protection. This behavior would be a completely legitimate act, one done by citizens across the United States on a daily basis, but for his immigration status. Under these circumstances the specter of dangerousness associated with unauthorized gun possession is not present. Unlike the felon or domestic abuser there is no inherent dangerousness in Mr. Orellana possessing a firearm. These circumstances, of course, do not relieve Mr. Orellana of his legal responsibility and culpability, but clearly show his possession in a separate and distinct context from the other categories of prohibited persons. This Court must consider that the nature of Mr. Orellana's criminal conduct here is less serious than the typical 922(g) defendant.

IV. The Minimally-Sufficient Sentence

The parsimony provision of 18 U.S.C. § 3553(a) imposes a statutory cap on sentences, regardless of what is recommended under the sentencing guidelines. The sentence cannot be greater than necessary to achieve the purposes of punishment. 18 U.S.C. § 3553(a)(1). Those purposes include deterrence, punishment, respect for the law, and rehabilitation. A sentence of time served will faithfully support those purposes under these circumstances.

In determining the minimally-sufficient sentence, the Court must basically ask whether a more severe sentence would achieve greater justice, deterrence, incapacitation, or rehabilitation. The advisory sentencing guidelines combine only two factors when calculating the suggested range: the offense conduct and the defendant's criminal record. The guidelines do not consider individual characteristics of a particular defendant as required by § 3553(a)(1), nor do they consider the unique aspects of the criminal conduct (save for few enumerated enhancements). The Court must not apply the advisory guideline sentence in any kind of general or presumptive manner.

Mr. Orellana's sentencing request of time served is sufficient. Ordinarily, Mr. Orellana could serve the suggested 10 month sentence as 5 months in prison followed by an additional 5 months in home confinement (per Zone C). His immigration status, however, precludes him from participating in BOP community confinement programs. Moreover, the Court should conclude that deportation serves as a comparable and suitable alternative to community confinement because it has the effect of keeping Mr. Orellana out of the general population. Additionally, Mr. Orellana will likely spend several months in ICE custody during the deportation process. Also, Mr. Orellana's effective banishment cannot be discounted as a punishment. *See Jordan v. DeGeorge*, 341 U.S. 223, 232 (1951) (Jackson, J., *dissenting*) (deportation penalizes over and above a sentence faced by a full citizen). The requested sentence followed by deportation is reasonable under these circumstances.

## V. Conclusion

For all of these reasons, Mr. Orellana asks the Court to impose a sentence of time served.

Respectfully submitted
Juan Orellana
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Dennis Jenkins, United States Probation Officer, and Peter Neronha, Assistant United States Attorney, on May 4, 2007.

/s/ Kevin J. Fitzgerald